Let's call the next case. 11-7-9-9 Bill R. Katz v. State Farm Mutual Auto Insurance Company When you get settled in, if you'd please, both sides, both attorneys, whether you're two parties, would approach the podium and tell us who you are and who you represent. Good morning, Your Honors. Dave Fitzpatrick on behalf of Plaintiff Appellant for Bill Katz. Good morning, Your Honors. I'm Frank Stevens. I represent the Appley State Farm Mutual Automobile Insurance Company. Each side has 15 minutes, but it's a pretty straightforward case. We'd appreciate it if you could keep it as... No, you've got 15 minutes to decide. You still have 5 minutes to reply, Mr. Plaintiff Appellant. We are familiar with the briefs and the pertinent portions of the record, so please get to your strongest point. Anytime you're ready, Mr. Ferguson. May it please the Court, I think essentially, if I could just drill down to the three points that were made by the judge below relative to why we think that respectfully that the court below was in error. Initially, the issue is whether or not the century policy should have been applicable. In other words, whether or not under Roberts v. Northland, the century policy was the primary under insurance policy and the state farm was the excess under insurance policy. Under the under insurance provisions that were cited in the record, I think the record is at 109 relative to the century policy, a defendant, I believe, puts the reliance on essentially 10 words in terms of defining what is an under insured vehicle. And essentially, and if I just might briefly read those words, essentially says, the limits are less than... Is that the century policy? I'm sorry? What are you reading from? I'm reading from the century policy. Right. And it's in the record, I believe, Your Honor, at 109, if I'm not mistaken. And the 10 words basically go, their limits are less than the limit of this coverage. Now, the century coverage was $50,000. Century made the judgment that there were no other limits relative to the primary liability policy. In other words, the underlying case, which was in DuPage, the defendant was belt. He had a policy also with State Farm for $100,000. That $100,000 was tendered. But pursuant to a court order, as the court here is aware of, those funds were specifically set aside to both satisfy the workers' compensation lien that was held, as well, and I think the division there was $60,000 relative to that, and then the remaining $40,000 was to the loss of consortium claim of Mrs. Katz. No money actually passed to Mr. Katz. The money went directly to, as is cited in the record, directly to the workers' comp carrier minus the statutory attorney's fees, and the balance went to Mrs. Katz. That's how century interpreted it. In other words, century interpreted their own policies, providing that their limits were in fact less than what was available simply because there were no limits. In other words, there was no liability limits available because Mr. Katz never received any of those. All century did as primary underinsured pursuant to Northland is make the judgment that they were entitled, as the primary underinsured policy, to withdraw, or to set off, I should say, the $47,654.08 for the net workers' compensation lien, and the math is provided in the brief. And they, in fact, did so, and they tendered a check to Mr. Katz in satisfaction of the underinsurance policy for $2,345.92. In other words, essentially the issue here is whether those ten words of the policy were appropriately decided by century, which is that their limits, in fact, were less than the limit available simply because there were no limits available given the fact that Mr. Katz never received it, the workers' compensation carrier received it. What else would they mean, though? What would those words mean otherwise? Well, the meaning suggested by the defendant is that, or the defendant-appellee, is that irrespective of the fact that no actual limits were received by Mr. Katz, that we should arbitrarily look at the limit on the declaration page and apply that, irrespective of the fact that he never got that. I mean, that would seem to be violent of public policy. But it certainly was not their contract interpretation of their own contract, which is that there were no limits that were less simply because Mr. Katz never received it. The other issue that was raised below by the judge was relative to Mrs. Katz receiving the $40,000 and whether or not that should be considered as a set-off relative to the State Farm policy. The case that I cited to the Court is the Smith v. Allstate case. Smith v. Allstate is very clear. If you want to take a set-off for a consortium, you have to provide coverage for a consortium in your policy. And you have to do so, and the key word here is unambiguously. The Smith v. Allstate case looked at the language that was contained within that Allstate policy and said you folks were certainly capable of putting in language that dealt with what is essentially a loss of consortium. As the Court is well aware, consortium is not a bodily injury, it's a personal injury. And in that particular case, they stated that Allstate could have easily said loss, I think the exact words the Court used, I don't want to misstate it here, was loss of services. So in other words, they could have put in loss of services language in that to show that, in fact, consortium was available under this claim or, excuse me, under their State Farm policy. And if, in fact, it was available, then there would be set-off appropriate, because otherwise you'd have the potential for double recovery. But as Smith v. Allstate says, if you don't unambiguously put it into your policy, and State Farm clearly did not do so here, the language they use does not at all talk about loss of services or loss of consortium. If you don't have it in your policy relative to a covered claim, you're not entitled to take it as a set-off. And I think the language that we cited in the policy from Coverage W clearly knows that. And I might add this in terms of emphasis. They knew how to do this, because if you look at the language, and if I can just read just briefly from it, this is the language where State Farm under the Coverage W defines what, in fact, is bodily injury. And what they say here is that bodily injury to one person includes all injury damage to others resulting from this bodily injury. Again, no specific setting out of any kind of loss of services or personal injury, which is what consortium is. And then they go on to talk about emotional distress. And then it goes, and all emotional distress resulting from this bodily injury sustained by other persons who do not sustain bodily injury. In other words, they cover bodily injury clearly. They also cover, in addition to it, the fact that if you have a claim for emotional distress associated with it, they're going to cover that too. What is lacking here, the huge gap here, is any reference to consortium of services, any reference to a personal injury. Clearly, they have not provided for it. If they don't provide for it in their own coverage, they're not entitled to take it as a set-off. Well, after Smith, or actually before Smith, the case had come out from the Second District, Broody. Broody was then followed by, again, in 1997, a, I'm sorry, followed the infidelity versus March and Due. And then McKinney, our Supreme Court case, followed Broody as well. Cited it, you know, same for the proposition of what is bodily injury. So you have Kel Campbell on one side, two appellate court judges, and a Supreme Court judge on the other, on Broody. It's not hard to which way to go, I don't think, on the consortium aspect of it. The last point I would raise, Judge, is the one that was cited in their brief for the first time, which is this issue of stacking. There was no stacking that were part of the briefs. In fact, if you look at the transcript, I think the only reference at all to stacking was we had two arguments on this, the one on March 9th at page 46 of Plaintiff Appellant's brief, and it had nothing to do with the idea that State Farm was asserting that there was language against stacking. So essentially they've awaited that argument here. Thank you very much. Thank you. You have time for reply. Thank you. Mr. Stephens. The essential argument of State Farm's motion for summary judgment in its appellate brief is that Century got it wrong. There was no underinsured coverage under the Century policy. In Illinois, underinsured coverage is a difference in limits coverage. Initially when the statute was first passed in March of 1980, it was an add-on coverage. In September of 1980, it was changed to a difference in limits coverage. The statute says that an underinsured vehicle means that the underinsured coverage has to be more than the tortfeasor's liability coverage. That's not what occurred here. In this case, the tortfeasor's liability coverage was $100,000, and Century's underinsured coverage was $50,000. There was no difference in limits. There was no underinsured claim. Just because Century got it wrong and Century decided to make some nominal payment to Mr. Katz does not prejudice State Farm's rights vis-à-vis its own policy language in the statute. There was no primary coverage. Since there is no primary coverage, State Farm's policies did not provide excess coverage. As we say in our brief, the appellate court has ruled that if there is no primary coverage, there can't be any excess coverage. So State Farm's policies were primary coverage. There's never been a dispute, although State Farm issued three policies, each with $250,000 of coverage. It's clear from the amended complaint and the answer in the arguments. There's never been any argument ever that the three State Farm policies stack, and they don't, because the statute says that when you have more than one policy, the limit of liability is a policy that provides the highest coverage. The highest amount of coverage is the same in all three policies, $250,000. So with reference to that supposed issue of stacking, it was never an issue. There's no stacking of State Farm's policies on top of the Century policy because you can't stack an excess policy onto something where there is no primary coverage. So whatever reason Century may have had for paying the $2,000 in change to Mr. Katz in the record does not support any reason for Century. The closest we come, Your Honors, is some discussion in front of Judge Billick. A letter was shown to Judge Billick. It's part of, it's attached, that transcript is attached to the appliance initial brief, but it's not part of the record. And Judge Billick looks at the letter, but it was never made part of the record. So we don't even know why Century made its payment. But it's clear under the statute and under the policy language, the certified policy that was eventually added to the record, which was added on State Farm's motion to supplement the record before the trial court, that Century's policy did not provide underinsured coverage to Mr. Katz, and the statute did not require underinsured coverage under Century's policy for Mr. Katz. Counsel, can you address the Section 155 argument relative to the bad faith? Well, first of all, Your Honor, I find it, first, obviously, the cases are very clear. You can't have 155 relief unless you can show that there was fixatious and unreasonable conduct. You also have to show actual damages. Mr. Katz hasn't been damaged by State Farm. State Farm does not owe Mr. Katz anything. There's no fixatious and unreasonable delay, and I think if you look at Judge Billick's 12-page reasoned opinion, you can see that Judge Billick agreed with State Farm. It's difficult for me to imagine how a trial court can find, can side with State Farm as to its legal arguments and then have plaintiff's counsel say that we're guilty of some kind of fixatious and unreasonable delay. The trial court was satisfied. We complied with the statute and we complied with our policy language. I don't think there's any justification at all for this Court to even consider a 155 count. The bottom line is Suntry got it wrong. Suntry should not have made any payment. State Farm was entitled to offset against his coverage the amount that Mr. Katz actually recovered, the amount that he did not have to pay back on his workers' compensation claim. Seltzer v. Country Mutual, Stryker v. State Farm, Ullman v. Wolverine Insurance all say that uninsured and underinsured coverages can be offset by workers' compensation payments, and that's what State Farm is asserting here. They're entitled to that setoff. They're also entitled to a full credit for the $100,000. With respect to this lawsuit consortium argument counsel made, the case that's on point here is Berruti. It's a State Farm case. It contains State Farm's language. It's not Allstate's policy language, and his cite to the Allstate case really has no relevancy to State Farm's policy language. For all those reasons, Your Honor, I respectfully submit that Judge Billick's decision should be upheld. Thank you very much. Mr. Fitzpatrick, briefly. If I might, counsel said Century got it wrong. So did State Farm. Because as the Court will recall, State Farm did not pay the $102,000 that they're claiming that they owed here. Rather, what they paid us was $161,876. Because initially, and I think this ties in with the Court's earlier question with regard to what is the basis for Section 155 damages, serial denials. I mean, essentially we have a situation where they initially took the position, contrary to what they're saying here in their briefs, they initially took the position that, in fact, there was a co-relationship, co-access, or co-insurance relationship with Century. In fact, what they wanted to do, in fact, was basically recognize the fact that they were co-access insurers and that they could have some sort of prorated division of the funds, only when they looked at their own policy language, which identified the fact that, no, in fact, there was no co-relationship between them and Century, but rather the relationship between them and Century was the primary and they were the only access underinsured through their tuned change. So for them to suggest that Century got it wrong when they themselves took that same position earlier is inconsistent, to say the least. The other issue is with respect to stacking. Just very briefly, Council mentioned the fact that stacking is not permissible amongst the three State Farm policies. That was not the issue below. The only stacking issue that was raised for the first time in their brief was between State Farm as the access underinsured and Century as the primary underinsured, and Roberts v. Northland has definitively defined exactly how that works. So respectfully, that argument is incorrect. Thank you very much. Thank you very much. Thank you. Thank you for the arguments and the briefs. This case will be taken under advisement and this Court will be adjourned.